UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
UNITED STATES OF AMERICA,

       - against –

LAURELL WELLS and GEORGIA WARD,

         Defendants.
------------------------------X

**MEMORANDUM AND ORDER**

20 Cr. 633 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

    Defendant Laurell Wells ("defendant" or "Wells") was indicted on November 24, 2020 on one count of conspiracy to commit wire and bank fraud in violation of 18 U.S.C. § 1344 and one count of aggravated identity theft in violation of 18 U.S.C. § 1028(A). Before the Court is defendant's motion to suppress all evidence obtained from the searches of three Apple iPhones that were seized from defendant during the course of his arrests for traffic violations in October 2018 and May 2019. Defendant challenges the constitutionality of both the seizures and searches of the phones. For the reasons discussed below, defendant's motion is denied.

## I.   BACKGROUND

    The background facts set forth herein are drawn from the complaint (ECF No. 1) ("Compl."), the warrants and sworn warrant applications attached as exhibits to the Government's moving papers (ECF No. 37) ("Gov't Br."), the police reports attached as exhibits to defendant's moving papers (ECF No. 36) ("Def. Br."),

and defendant's sworn affidavit (ECF No. 36-1) ("Wells Aff."), and are utilized solely for the purpose of analyzing this motion.

## A.    Investigation into Wells' Criminal Activity

In 2018, New York City Police Department ("NYPD") Detective Cliford Spell ("Detective Spell") and U.S. Attorney's Office Special Agent Anthony Giattino ("Agent Giattino") began investigating defendant for bank fraud and identity theft. Def. Br. Exs. A, E. According to the complaint, this initial investigation revealed that in November 2017, defendant, using the alias "Corey," began a relationship via an online dating application with a woman ("Employee") whose profile indicated that she worked at a bank (the "Bank"). Compl. ¶¶ 7-8. After approximately two weeks of dating, defendant asked Employee to cash fraudulent checks on his behalf and threatened to report her to her supervisors if she did not also provide him with personally identifying information for certain of the Bank's accountholders. Id. ¶ 7.

Between November 2017 and January 2018, at least fourteen accounts accessed by Employee were utilized for fraudulent activity resulting in unauthorized transactions of more than $45,000. Id. ¶ 9. During this time, Employee contacted defendant on the same cellphone number that was associated with wire transfers that defendant made. Id. ¶¶ 11-12. Detective Spell and

-2-

Agent Giattino also came to believe that defendant may have been involved in hundreds of other bank fraud complaints totaling $3.2 million and dating back to 2013. Def. Br. Ex. H.

**B.   2018 Seizure and Search of Wells' Phones**

On October 29, 2018, NYPD Officer Minh Tran ("Officer Tran") observed defendant driving a car without a front license plate and conducted a stop of the vehicle. Def. Br. Ex. I. Upon discovering that defendant was driving with a suspended license, Officer Tran arrested defendant and transported him to the 44th precinct in the Bronx. Id. At the precinct, Officer Tran conducted an inventory search and found defendant in possession of $10,000 and two Apple iPhones (the "2018 Phones"), all of which was vouchered. Id.

On October 31, 2018, after receiving an alert notifying him that defendant had been arrested, Detective Spell went to the 44th Precinct, spoke to Officer Tran about what transpired, and took photographs of the 2018 Phones. Def. Br. Exs. I-K. Believing the 2018 Phones to contain evidence of defendant's bank fraud and identity theft activity, Detective Spell initiated the continued seizure of the 2018 Phones. Gov't Br. at 2. After defendant was released on his own recognizance and went back to the precinct to retrieve his inventoried property, the NYPD returned the $10,000 but refused to return the 2018 Phones. Wells Aff. ¶¶ 10-11.

On November 27, 2018, Agent Giattino filed an application (the "2018 Warrant Application") for a warrant to search and seize the 2018 Phones, which was signed by Magistrate Judge Fox the same day (the "2018 Warrant"). Gov't Br. Ex. A. The 2018 Warrant permitted law enforcement personnel to review the electronically stored information ("ESI") contained on the 2018 Phones for evidence of identity theft and bank fraud, including contact information, call logs, voicemail messages, texts, email messages, messages on social media applications, calendar information, location data, bank records, and other evidence related to the subject offenses. Id. On January 18, 2019, Agent Giattino informed Detective Spell that the search of the 2018 Phones was complete. Def. Br. Ex. K.

## C.    2019 Seizure and Search of Wells' Phone

On May 29, 2019, defendant was stopped in his vehicle by a different NYPD officer for making an illegal left turn. Wells Aff. ¶ 14. As before, the officer discovered that defendant was driving without a valid license. Id. Before he was taken into custody, defendant hid his cellphone, another Apple iPhone (the "2019 Phone"), in the seat cushion of his car. Id. After his arrest, the defendant was transported to the precinct, as was his car. Id. While defendant was in a holding cell, an officer approached him and told him that the police had found the 2019 Phone. Id.

-4-

Later that day, Detective Spell received a notification that defendant had again been arrested for driving on a suspended license. Def. Br. Ex. P. Detective Spell called the arresting officer, advised her that defendant was the subject of an ongoing investigation, and requested that Detective Spell's name be placed on any vouchered property. Id. Once again, when defendant was released on his own recognizance and went to the precinct to retrieve his belongings, the NYPD declined to return the 2019 Phone. Wells Aff. ¶ 16.

On June 19, 2019, Detective Spell obtained the 2019 Phone from the precinct and gave it to the U.S. Attorney's Office to be analyzed upon the receipt of a search warrant. Special Agent Jeremy Rosenman filed an application (the "2019 Warrant Application" and together with the 2018 Warrant Application, the "Warrant Applications") for a warrant to search and seize the 2019 Phone on July 16, 2019. Gov't Br. Ex. B. Judge Fox issued the warrant that same day (the "2019 Warrant" and together with the 2018 Warrant, the "Warrants"). Id.

## II.  DISCUSSION

### A.  Seizure of the Phones

Warrantless searches and seizures "are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." United States v.

-5-

Howard, 489 F.3d 484, 492 (2d Cir. 2007) (quoting Coolidge v. New
Hampshire, 403 U.S. 443, 454-55 (1971)). One such exception is the
inventory search, which entails "search[ing] the personal effects
of a person under lawful arrest as part of the routine
administrative procedure at a police stationhouse incident to
booking and jailing the suspect." Illinois v. Lafayette, 462 U.S.
640, 643 (1983). An inventory search is lawful so long as it is
conducted in good faith pursuant to standardized procedures and is
not "a ruse for general rummaging in order to discover
incriminating evidence." United States v. Lopez, 547 F.3d 364, 370
(2d Cir. 2008) (quoting Florida v. Wells, 495 U.S. 1, 4 (1990)).

With respect to defendant's arrest in October 2018, defendant
concedes that his personal belongings, including the 2018 Phones,
were vouchered during an inventory search. Def. Br. at 16-17, Ex.
I. Moreover, that search was done pursuant to the NYPD Patrol Guide
(the "Guide"), which requires that an inventory search be conducted
"[w]henever any property comes into the custody of [the]
Department." Gov't Br. Ex. C. Since defendant does not allege that
this initial process was pretextual, the search of defendant's
personal effects and seizure of the 2018 Phones were lawful.

As to defendant's arrest in May 2019, defendant argues that
the search of the car he was driving when he was arrested was an

unlawful search incident to arrest. In support, defendant relies on the arresting officer's statement to Detective Spell that "a search of [defendant's] vehicle incidental of a lawful arrest[] did not produce any additional charges." Def. Br. Ex. P. However, defendant does not claim that the arresting officer conducted a search of his vehicle on the scene at the time of his arrest. See Wells Aff. ¶ 14. Indeed, defendant states only that he "secreted" his cellphone in the driver's seat cushions prior to his arrest, that the car was transported to the precinct, and that an officer stopped by his holding cell and informed him that the police found his phone. Id.

In any event, there is no dispute that defendant's vehicle was transported to the precinct and thus would have been subject to a mandatory inventory search per the Guide. The Guide requires such a search for all vehicles that come into the custody of the NYPD, not just impounded vehicles, and includes in its scope a thorough search of the seat cushions. Gov't Br. Ex. C. It was thus inevitable that the 2019 Phone would have been discovered pursuant to a standardized, non-investigative inventory search. Accordingly, the Court need not determine whether there was a search incident to arrest and if any such search was permissible to conclude that the seizure of the 2019 Phone was lawful. See

United States v. Mendez, 315 F.3d 132, 137 (2d Cir. 2002) ("Under the inevitable discovery doctrine, evidence that was illegally obtained will not be suppressed if the government can prove that the evidence would have been obtained inevitably even if there had been no statutory or constitutional violation.") (internal quotation marks and citation omitted); United States v. Perea, 986 F.2d 633, 644 (2d Cir. 1993) ("[I]f there has been a lawful arrest and an immediately ensuing search is not justifiable as incident to the arrest, a motion to suppress the proceeds of the immediate search may nonetheless be denied if the contents would inevitably have been discovered in a permissible inventory search."); United States v. Echevarria, 692 F. Supp. 2d 322, 335 (S.D.N.Y. 2010) ("If an inventory search of a vehicle or other property is inevitable, a search of the property at the time of arrest is proper even if the vehicle or other property has not yet been taken into custody.").

Having lawfully seized the 2018 and 2019 Phones (together, the "Phones") in the first instance, the NYPD was permitted to retain possession of the Phones pending the issuance of a search warrant because the officers had probable cause to believe that the Phones contained evidence of other criminal activity — namely, bank fraud and/or identity theft. See United States v. Babilonia,

854 F.3d 163, 180 (2d Cir. 2017) (upholding warrantless, plain-view seizure of cellphones where agent knew defendant used cellular devices in furtherance of crimes, agent had probable cause to believe devices contained evidence of crimes, and devices were not searched until after warrant was obtained); United States v. Henderson, 439 F. App'x 56, 58-59 (2d Cir. 2011) (upholding inventory search where police retained cellphone); United States v. Cushnie, No. 14 Cr. 119 (PGG), 2014 WL 7447149, at *12 (S.D.N.Y. Dec. 31, 2014) (upholding warrantless, plain-view seizure of defendant's cell phone, keys, and wallet where marshals had reason to believe they would provide evidence of defendant's interstate travel and failure to register as a sex offender); see also Riley v. California, 573 U.S. 373, 388 (2014) (noting it was "sensible" for movants to "concede that officers could have seized and secured their cell phones to prevent destruction of evidence while seeking a warrant"). As such, defendant's Fourth Amendment challenge to the seizures of the Phones fails.

**B.    Search of the Phones**

Defendant next argues that the searches of the Phones were unconstitutional because the Warrants were not supported by probable cause and the scope of the Warrants was overly broad and not sufficiently particular. Defendant also argues that there were

material omissions in the Warrant Applications entitling defendant to a hearing under <u>Franks v. Delaware</u>. 438 U.S. 154 (1978).

**1. Probable Cause**

Under the Fourth Amendment, police officers must generally obtain a warrant issued by a neutral magistrate upon a finding of probable cause before searching the contents of a cellphone. <u>See Carpenter v. United States</u>, 138 S. Ct. 2206, 2214 (2018) (citing <u>Riley v. California</u>, 573 U.S. 373, 401 (2014)). Probable cause to search exists "where the totality of circumstances indicates a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" <u>Walczyk v. Rio</u>, 496 F.3d 139, 156 (2d Cir. 2007) (quoting <u>Illinois v. Gates</u>, 462 U.S. 213, 238 (1983)). Importantly, a magistrate judge's finding of probable cause is "entitled to substantial deference, and doubts should be resolved in favor of upholding the warrant." <u>United States v. Rosa</u>, 11 F.3d 315, 326 (2d Cir. 1993). As such, "the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." <u>Rivera v. United States</u>, 928 F.2d 592, 602 (2d Cir. 1991) (quoting <u>Gates</u>, 462 U.S. at 238-39) (alterations omitted).

Defendant challenges the Magistrate Judge's probable cause determination as to the Phones on two grounds. First, he argues

that the Warrant Applications did not allege facts sufficient to create probable cause to search the Phones. Second, he argues that even if the allegations created probable cause, the information was stale and thus could not support the issuance of the Warrants. Neither of these arguments are availing.

In arguing that there was no probable cause to search the Phones, defendant makes much of the fact that the Warrant Applications do not establish that defendant used the seized Phones in particular to commit the crimes detailed therein. Def. Br. at 21-22. No such showing was required, however, because the Warrant Applications provided ample basis for the Magistrate Judge to conclude that there was a fair probability that the Phones would contain evidence of bank fraud and/or identity theft activity. See United States v. Singh, 390 F.3d 168, 182 (2d Cir. 2004) ("A showing of nexus" between the criminal activities alleged and the place to be searched "does not require direct evidence and may be based on reasonable inference[s] from the facts presented based on common sense and experience.") (internal quotation marks and citation omitted). Specifically, the Warrant Applications indicated that:

- Employee met an individual known as "Corey" on an online dating application and shortly thereafter, Corey induced Employee to cash fraudulent checks on Corey's behalf and to provide Corey with sensitive account information for

-11-

the Bank's accountholders. 2018 Warrant App. ¶ 7; 2019 Warrant App. ¶ 8.

- Employee contacted Corey on the same cellphone number that was associated with Laurell Wells in Western Union's records. 2018 Warrant App. ¶¶ 7-8.

- A person known as "Rel," which is a nickname for "Laurell," attempted to recruit other employees at the Bank via social media platforms, phone calls, and text messages to advance additional fraudulent schemes. 2018 Warrant App. ¶ 10. In at least some of these cases, Rel used the same cellphone number as Corey. 2018 Warrant ¶¶ 10-11; 2019 Warrant App. ¶¶ 9-10.

In addition, the special agents who filed the Warrant Applications, both of whom have extensive law enforcement experience, attested to the fact that perpetrators of bank fraud and identity theft store records of their criminal activity on cellphones and that such records can be recovered long after they are created or saved. 2018 Warrant App. ¶¶ 1, 14-15; 2019 Warrant App. ¶¶ 1, 15-16. The 2019 Warrant Application also included evidence of defendant's incriminating communications with alleged co-conspirators that were obtained from the search of the 2018 Phones in accordance with the 2018 Warrant. 2019 Warrant App. ¶ 13. Taken together, these assertions are more than sufficient to create probable cause to believe that the Phones would contain evidence of criminal activity by defendant.

Furthermore, the information set forth in the Warrant Applications was not stale. As the Second Circuit has observed, "[t]he law sensibly draws no bright-line rule for staleness."

Walczyk, 496 F.3d at 162. "The principal factors in assessing
whether or not the supporting facts have become stale are the age
of those facts and the nature of the conduct alleged to have
violated the law." Rivera, 928 F.2d at 602 (quoting United States
v. Martino, 664 F.2d 860, 867 (2d Cir. 1981)). However, in cases
where "the supporting affidavits present a picture of continuing
conduct or an ongoing activity, as contrasted with isolated
instances of illegal acts, the passage of time between the last
described act and the presentation of the application becomes less
significant." Id.

This is such a case. The 2018 and 2019 Warrants were obtained
approximately 10 months and 14 months, respectively, after the
last-dated criminal acts specified in each Warrant Application.
But the Warrant Applications detailed criminal activity spanning
many months, showed that this activity was part of a broader
pattern of fraudulent conduct, and indicated that evidence could
be recovered from cellular devices long after it was created. 2018
Warrant App. ¶¶ 8, 10, 15; 2019 Warrant App. 8-9, 16. Given the
nature of the conduct alleged, and bearing in mind the substantial
deference owed to a magistrate judge's finding of probable cause,
it cannot be said that the gaps in time at issue here rendered the
information stale.

## 2. Scope of Warrants

The Fourth Amendment "forbids overbreadth" in search warrants, United States v. Zemlyansky, 945 F. Supp. 2d 438, 450 (S.D.N.Y. 2013), and requires that the scope of any authorized search be "set out with particularity." Kentucky v. King, 563 U.S. 452, 459 (2011). "Although somewhat similar in focus, these are two distinct legal issues: (1) whether the items listed as 'to be seized' in the warrant were overbroad because they lacked probable cause and (2) whether the warrant was sufficiently particularized on its face to provide the necessary guidelines for the search by the executing officers." Zemlyansky, 945 F. Supp. 2d at 450 (internal quotation marks and citation omitted). Defendant argues both that the Warrants were not sufficiently particular and that the Warrants were impermissibly broad.

To satisfy the Fourth Amendment's particularity requirement, a warrant must (1) "identify the specific offense for which the police have established probable cause," (2) "describe the place to be searched," and (3) "specify the items to be seized by their relation to designated crimes." United States v. Purcell, 967 F.3d 159, 178 (2d Cir. 2020) (internal quotation marks omitted); see United States v. Gatto, 313 F. Supp. 3d 551, 560 (S.D.N.Y. 2018) (applying three-factor test to conclude that particularity

requirement was satisfied). All three elements are satisfied here. The Warrants identified aggravated identity theft, bank fraud, and conspiracy to commit bank fraud as the subject offenses, described the make and model of the particular devices to be searched, and specified a list of items to be seized that relate solely to the subject offenses. 2018 Warrant, Att. A; 2019 Warrant, Att. A.

Moreover, neither of the Warrants were overbroad because they both set forth a cabined list of items to be searched, which was amply supported by probable cause. The Warrant Applications presented facts indicating that defendant connected with individuals via online dating and other social media applications, text messages, and calls to advance various fraud schemes. 2018 Warrant App. ¶¶ 8, 10, 12; 2019 Warrant App. ¶¶ 8-9, 11, 13. The Warrant Applications also established that the Phones in defendant's possession at the time of his arrests were likely to contain evidence of such criminal activity. 2018 Warrant App. ¶¶ 14-16; 2019 Warrant App. ¶¶ 15-16. On these facts, there was probable cause to believe that such evidence would be found in the areas of the Phones enumerated in the Warrants. Accordingly, the Warrants were sufficiently particular and not overbroad.

### 3. Material Omissions

In <u>Franks v. Delaware</u>, "the Supreme Court held that although a presumption of validity attaches to a law enforcement affidavit, in certain circumstances a defendant is entitled to a hearing to test the veracity of the affiant's statements." <u>United States v. Falso</u>, 544 F.3d 110, 125 (2d Cir. 2008) (citing 438 U.S. 154 (1978)). To obtain a <u>Franks</u> hearing, the defendant must make "a preliminary showing that the government's affidavit misstated or omitted material information . . . ." <u>United States v. Rajaratnam</u>, 719 F.3d 139, 146 (2d Cir. 2013) (internal quotation marks and citation omitted). When a defendant alleges that an affidavit is infirm due to material omissions, "the ultimate inquiry is whether, after putting aside erroneous information and correcting material omissions, there remains a residue of independent and lawful information sufficient to support a finding of probable cause or necessity." <u>Id.</u> (internal quotation marks, alteration, and citation omitted).

Defendant recites a myriad of facts that were purportedly omitted from the Warrant Applications but fails to demonstrate that any such omission was material to the finding of probable cause. In emphasizing omitted facts that would have demonstrated that the seized Phones were not the same phones used to communicate

with Employee, Def. Br. at 27-28, defendant once again mistakenly presumes that a direct connection between the Phones and the criminality involving Employee was required for a finding of probable cause. As explained above, the Warrant Applications created probable cause to believe that defendant used cellular devices to advance multiple criminal schemes over a period of several months, that the seized Phones belonged to defendant, and that evidence of criminal activity would thus be found on the Phones. This conclusion would remain true even if the lack of connection between the Phones and the communications with Employee had been made explicitly clear.

Defendant's additional arguments related to omissions in the 2019 Warrant Application are equally meritless. Defendant asserts that in summarizing defendant's incriminating text messages with co-conspirators that were revealed during the search of the 2018 Phones, the Government excluded certain portions and failed to explain the basis for its conclusion that defendant had sent and received the messages at issue. Def. Br. at 28-29. However, as the Government observes, the inclusion of this information would have only bolstered the finding of probable cause. Gov't Br. at 22. As such, defendant has failed to satisfy his burden under Franks and

-17-

is not entitled to a hearing on the veracity of the Warrant Applications.

### III. <u>CONCLUSION</u>

For the foregoing reasons, defendant's motion to suppress is denied. A telephonic status conference will be held on December 2, 2021 at 12:30 p.m. Speedy Trial Time is excluded between now and December 2, 2021 to enable the defendants and their counsel to consider their course of action in light of this decision. The Court finds that the ends of justice served by the granting of this continuance outweigh the best interests of the public and the defendant in a speedy trial. 18 U.S.C. § 3161(h)(7)(A). The Clerk of Court is respectfully directed to terminate the motion pending at ECF No. 36.

**SO ORDERED.**

Dated:    New York, New York
          November 18, 2021

_____
          NAOMI REICE BUCHWALD
          UNITED STATES DISTRICT JUDGE