UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X

UNITED STATES OF AMERICA,

                    - against -                    **MEMORANDUM AND ORDER**

LAURELL WELLS,                                     20 Cr. 633 (NRB)

                         Defendant.

---------------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**


        Defendant Laurell Wells ("defendant" or "Wells") was indicted
on November 24, 2020 on one count of conspiracy to commit wire and
bank fraud in violation of 18 U.S.C. § 1344 and one count of
aggravated identity theft in violation of 18 U.S.C. § 1028(A).
See ECF No. 10.  Presently before the Court is Wells' second motion
to suppress all evidence obtained from the searches of three Apple
iPhones that were seized from him during the course of his arrests
for traffic violations in October 2018 and May 2019.  See ECF Nos.
87-88.  Of the three phones that were seized, Wells owned only
one; the other two were purchased by Wells' girlfriend and co-
defendant, Georgia Ward,[1] who gave Wells permission to use the
phones.  See ECF No. 87-4 ¶¶ 6-8, 12-13 ("Wells 2021 Aff.").

---

[1] Ward was indicted on the same counts as Wells.  See ECF No. 10.  On March 29,
2022, Ward pled guilty to Count One, conspiracy to commit wire and bank fraud
in violation of 18 U.S.C. § 1344.  See ECF No. 48.  On September 29, 2022, Ward
was sentenced to time served with nine months of home confinement with location
monitoring, three years of supervised release, forfeiture of $10,000, and a
$100 special assessment.  See ECF No. 84.

On November 18, 2021, the Court denied Wells' first motion to suppress.  See ECF No. 39.  That decision rejected Wells' arguments that the phones were unlawfully seized, that the search warrants were not supported by probable cause, that the search warrants were overly broad and not sufficiently particular, and that there were material omissions in the search warrant affidavits that necessitated a Franks hearing.  See id.; see also ECF Nos. 36, 38. Now, Wells argues that there were unreasonable delays between when the Government seized his phones and obtained search warrants, which constitute violations of his Fourth Amendment rights under United States v. Smith, 967 F.3d 198 (2d Cir. 2020)—a case decided 21 months after the October 2018 seizure and 14 months after the May 2019 seizure—and require the suppression of all evidence obtained from those phones.  See ECF No. 88 ("Mot.").  For the reasons set forth below, Wells' second motion to suppress is denied in its entirety.

## BACKGROUND

The background facts set forth herein are drawn from the complaint, see ECF No. 1 ("Compl."); the warrants and sworn warrant applications attached as exhibits to Wells' moving papers, see ECF No. 87; Wells' sworn affidavits from 2021 and 2022, see Wells 2021 Aff., ECF No. 105 ("Wells 2022 Aff.");[2] and the sworn affidavit of

---

[2] Wells did not sign his affidavit that was attached as an exhibit to his second motion to suppress, dated October 14, 2022. See ECF No. 87-3.  At the time, Wells objected to the second motion to suppress being filed before he received

U.S. Attorney's Office ("USAO") Investigative Specialist Enrique Santos, see ECF No. 109-1 ("Santos Aff."),[3] and are utilized solely for the purpose of analyzing this motion.   Because the facts underlying the investigation into Wells' criminal activity and arrests were discussed in the Court's November 18, 2021 Memorandum and Order denying Wells' first motion to suppress, see ECF No. 39, the Court will proceed directly to discussing the facts relevant to deciding this motion.

### 1. Seizure and Search of Wells' 2018 Phones

After Wells was arrested on October 29, 2018, an inventory search was conducted and two Apple iPhones—a pink iPhone 8 Plus (the "First 2018 Phone") and a black iPhone 8 Plus (the "Second 2018 Phone") (collectively, the "2018 Phones")—found in his possession were vouchered.  See ECF Nos. 39 at 3, 87-1 at 5.  As noted, Ward is the owner of the First 2018 Phone.  See Wells 2021 Aff. ¶¶ 6, 12.  She purchased the First 2018 Phone on August 14, 2018, and gave Wells permission to use the phone.  See id. ¶ 6.

---

a complete copy of his phones' extraction reports.  See Mot. at 7 n.1.  By letter on October 7, 2022, the Government informed the Court that the extraction reports were previously "produced to the defense in March 2021 and July 2022 and directly to the defendant at Essex County Jail in April 2022." ECF No. 86.  Nevertheless, the Government agreed to "make a new copy of the extractions and provide it to the defendant." Id.  The Government later informed the Court that "this full production, which includes the native Cellebrite program and full extraction reports, was made to the defendant, at Essex County Jail, on or about October 14, 2022." See ECF No. 109.  Wells subsequently signed his affidavit, which was filed on ECF on December 16, 2022.  See ECF No. 105.

[3] The Government filed this sworn affidavit on January 10, 2023, after Wells raised allegations about his phones being accessed before search warrants were obtained by the Government.  See ECF Nos. 85, 91, 93, 108.

Wells "believe[s] [that he] purchased" the Second 2018 Phone "a week or so later." See id. ¶ 8.

The day after Wells' arrest, October 30, 2018, Wells went back to the precinct to retrieve the 2018 Phones, but the police refused to return the phones. See Wells 2022 Aff. ¶¶ 5-6. On October 31, 2018, New York City Police Department ("NYPD") detective Cliford Spell ("Detective Spell"), who had been investigating Wells for bank fraud and identity theft, initiated the continued seizure of the 2018 Phones, believing them to contain evidence of Wells' bank fraud and identity theft activity. See ECF No. 39 at 2-3. "On or about November 5, 2018, [Ward], its official owner, reported the [First 2018 Phone] lost." Wells 2021 Aff. ¶ 12.

On November 27, 2018, USAO Special Agent Anthony Giattino, who was involved in the investigation, filed an application for a warrant to search and seize the 2018 Phones, which was signed by Magistrate Judge Fox the same day. See ECF Nos. 39 at 4, 87-1 at 1. In total, 29 days passed between the date the 2018 Phones were seized and the date the search warrant was issued. See Mot. at 1.

Once the search warrant was obtained, the USAO attempted to access the 2018 Phones, but both phones were password protected. See Santos Aff. ¶ 8. Thus, the 2018 Phones were sent to a company, Cellebrite, to attempt unlocking. See id. Once Cellebrite identified the passcodes for the First 2018 Phone on January 3, 2019 and the Second 2018 Phone on March 26, 2019 and sent the 2018

Phones back to the USAO, extraction reports were created for the First 2018 Phone on or about January 17, 2019 and the Second 2018 Phone on or about April 1, 2019.  See id. ¶¶ 8-9.

### 2. Seizure and Search of Wells' 2019 Phone

Following Wells' May 29, 2019 arrest during a traffic stop, in which he was driving Ward's car, Ward's car was taken to the precinct and another Apple iPhone 8 Plus (the "2019 Phone") was found in the seat cushion.  See ECF No. 39 at 4-5, 87-2 at 1; Wells 2021 Aff. ¶ 14.  The 2019 Phone belonged to Ward, who purchased the phone as a replacement to the First 2018 Phone and allowed Wells to use the phone.  See Wells 2021 Aff. ¶ 13.  That same day, Detective Spell asked that his name be placed on any vouchered property.  See ECF No. 39 at 5.  On May 30, 2019, Wells went to the precinct to retrieve the 2019 Phone, but the police refused its return.  See Wells 2022 Aff. ¶ 9.

On June 19, 2019, Detective Spell obtained the 2019 Phone from the precinct and gave it to the USAO to be analyzed upon the receipt of a search warrant.  See ECF No. 39 at 5.  On July 16, 2019, Special Agent Jeremy Rosenman filed an application for a warrant to search and seize the 2019 Phone, which was signed by Magistrate Judge Fox on the same day.  See id.; ECF No. 87-2 at 1. In total, 48 days passed between the date the 2019 Phone was seized and the date a search warrant was issued.  See Mot. at 1.

Once the search warrant was obtained, the USAO attempted to unlock the 2019 Phone and found that it was assigned the same passcode as one of the 2018 Phones.  See Santos Aff. ¶ 10. Therefore, the 2019 Phone did not need to be sent to Cellebrite, and an extraction report was created on or about July 17, 2019. See id.

## DISCUSSION

In his second motion to suppress, Wells argues that there were unreasonable delays between when the Government seized his phones and obtained search warrants, which constitute violations of his Fourth Amendment rights under United States v. Smith, 967 F.3d 198, 203 (2d Cir. 2020), and require the suppression of all evidence obtained from the phones.  See Mot.  The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const., amend. IV.  In Smith, the Second Circuit held that, while "[i]t is common for the police to temporarily seize a suspect's personal property if they have probable cause and intend to apply for a warrant to search the property for evidence of a crime," "the Fourth Amendment requires that they act with diligence to apply for a search warrant."  967 F.3d at 202. Indeed, "even a seizure based on probable cause is unconstitutional if police act with unreasonable delay in securing a warrant." United States v. Martin, 157 F.3d 46, 54 (2d Cir. 1998).

In Smith, the Second Circuit also made clear, however, that "[n]ot every violation of the Fourth Amendment justifies invocation of the exclusionary rule to require suppression of evidence." 967 F.3d at 211. Rather, "[t]o trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." Herring v. United States, 555 U.S. 135, 144 (2009). Accordingly, "the exclusionary rule applies only if the police have violated the Constitution deliberately, recklessly, or with gross negligence, or if a constitutional violation is the product of recurring or systemic negligence." Smith, 967 F.3d at 211 (citing Davis v. United States, 463 U.S 229, 240 (2011) and Herring, 555 U.S. at 144).

The Court finds that neither the 29-day delay between seizing the 2018 Phones and obtaining a search warrant nor the 48-day delay between seizing the 2019 Phone and obtaining a search warrant was unreasonable in violation of the Fourth Amendment. In any event, there is no basis to invoke the exclusionary rule to require suppression of evidence obtained from any of the phones. Wells' second motion to suppress is therefore denied.

**A. Unreasonable Delay**

"To determine whether a delay [] in applying for a search warrant is reasonable, courts must 'balance the nature and quality

of the intrusion on the individual's Fourth Amendment rights against the government interests alleged to justify the intrusion.'" United States v. Corbett, No. 20 Cr. 213 (KAM), 2021 WL 4480626, at *2 (E.D.N.Y. Sept. 30, 2021) (quoting United States v. Place, 462 U.S. 696, 703 (1983)). In Smith, the Second Circuit identified four factors "as relevant to deciding whether [a] delay was unreasonable: '[1] the length of the delay, [2] the importance of the seized property to the defendant, [3] whether the defendant had a reduced property interest in the seized item, and [4] the strength of the state's justification for the delay.'" Smith, 967 F.3d at 203 (citing United States v. Smith, 759 F. App'x 62, 65 (2d Cir. 2019)). The Court addresses each factor in turn.

### 1. Length of the Delay

The length of both the 29-day and 48-day delays were presumptively unreasonable. Indeed, in Smith, the Second Circuit gave "independent weight to the length of the delay" and "conclude[d] that a month-long delay well exceeds what is ordinarily reasonable." Smith, 967 F.3d at 207.

The Government concedes that "[t]he time periods at play here do approximate the month-long period of Smith and this factor may support the defendant," but argues that the 29-day delay in obtaining a warrant for the 2018 Phones "is artificially enlarged by the Thanksgiving holiday, which should be considered in evaluating the time period at issue." See ECF No. 92 at 6 ("Opp.").

8

As Wells highlights on reply, however, the time period at issue in Smith also encompassed the Thanksgiving holiday.  See ECF No. 110 at 1-3 ("Reply").  Like Judge Kearse, the Court is reluctant to "tax the responsible officer for the days he was scheduled not to work," Smith, 967 F.3d at 217 (Kearse, J., concurring), but in following the majority's opinion in Smith and the courts in this Circuit that have subsequently applied Smith,[4] the Court finds that this factor weighs in favor of Wells as to both delays, but only to a slight degree with respect to the 29-day delay.

## 2. Importance of the Seized Property to Wells

The second factor, which "considers the importance of the seized property to the rightful owner of the property and the 'nature of the property seized,'" weighs strongly in favor of the Government.  Corbett, 2021 WL 4480626, at *5 (citing Smith, 967 F.3d at 207); see also Green, 2021 WL 1877236 at *5 (providing that the second factor "focuses on [the defendant's] relationship to the [cell] phones, including the extent to which the phone[s]

---

[4] The Government argues that "delays far longer than those seen in this case have been upheld as reasonable post-Smith." Opp. at 6 (citing Corbett, 2021 WL 4480626, at *7 (101-day delay); United States v. Green, No. 18 Cr. 121 (RJA) (MJR), 2021 WL 1877236, at *8 (W.D.N.Y. Feb. 3, 2021) (three-month delay); In re Application for Search Warrant, 527 F. Supp. 3d 179, 185 (D. Conn. 2020) (51-day delay)).  In all of the cases cited by the Government, however, the length of the delay factor weighed in favor of the defendant, even though the courts did ultimately find that the delay was not unreasonable in violation of the Fourth Amendment.  Moreover, courts in this Circuit applying Smith to delays shorter than the 29-day and 48-day delays at issue here have found the length of delay factor to favor the defendant.  See e.g., United States v. Hay, No. 19 Cr. 170 (RJA), 2023 WL 142119, at *8 (W.D.N.Y. Jan. 10, 2023) (finding "'modest' delay of 22 days weighs in [defendant's] favor").

contain[] business or personal information, and the efforts [d]efendant has made to obtain [their] return" (internal citation omitted)).

In assessing this factor, the Court recognizes that "[m]odern cell phones, as a category, implicate privacy concerns far beyond those implicated by the search[es]" of ordinary personal effects, Riley v. California, 573 U.S. 373, 393 (2014), due to the "immense storage capacity of modern cell phones and how people commonly use them to store vast amounts of highly personal information," Smith, 967 F.3d at 208. And, here, Wells states that he "used [the] phones every day including, among other activities, to communicate, to navigate through the GPS/map application, to take photographs, and to look things up on the internet," that "there was [a] significant amount of personal, private content that was kept exclusively on [the] phones," that he requested the return of all three phones the day after they were seized, and that he "had no other phone or device." See Wells 2022 Aff. ¶¶ 4, 5, 9.

Several facts in this case, however, reduce the likelihood that Wells had an expectation of privacy as to the phones and used the phones to store highly personal information.

First, Wells is not the rightful owner of either the First 2018 Phone or the 2019 Phone. See Wells 2021 Aff. ¶¶ 6, 12, 13. As such, the owner of those phones, Ward, presumably had some

degree of access to the information Wells stored on them, reducing Wells' expectation of privacy.

Second, pursuant to a condition of his probation in New Jersey, Wells was on notice that he must "submit at any time to a search conducted by a probation officer, without a warrant, of all electronic devices, which include, but are not limited to, any computers cellphones, tablets or other Internet capable devices . . . that [the defendant had] access to."  See ECF No. 92-1 at 2; see also Wells 2021 Aff. ¶ 5.  Wells therefore was well aware that any information stored on his phones could be viewed by a probation officer at any time, thus reducing any expectation of privacy. See Griffin v. Wisconsin, 483 U.S. 868, 874 (1987) ("[I]t is always true of probationers . . . that they do not enjoy 'the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special [probation] restrictions.'" (quoting Morrissey v. Brewer, 408 U.S. 471, 480 (1972)); United States v. Amerson, 483 F.3d 73, 84 (2d Cir. 2007) ("Probationers . . . have diminished . . . reasonable expectations of privacy.").

Third, Wells' use of multiple phones at the same time, at least in 2018, reduces the possibility that "any one of these devices was uniquely important to [Wells], either as a means of communication with others or as a vehicle to store an 'immense amount of personal data.'" Green, 2021 WL 1877236, at *5.  Indeed,

while Wells asserts that he "had no other phone or device," Wells 2022 Aff. ¶ 4, his assertion is plainly undermined by his previous sworn affidavit, in which he stated that "[n]one of the three devices that were the subjects of the two warrants had the phone number which Faith Brewster and I used to communicate with each other," Wells 2021 Aff. ¶ 17.

Finally, "there is substantial evidence here to indicate that [Wells] used the cell phones to engage in [criminal activity]." Green, 2021 WL 1877236, at *5.  Such evidence "suggests that the information contained on the cell phones likely related to criminal behavior rather than lawful activities."  Id.

In light of these facts, the Court finds that this factor weighs strongly in favor of the Government.

### 3. Reduced Property Interest

The Court similarly finds that Wells had a diminished property interest in all three phones.  Beyond the significant issue of ownership as to the First 2018 Phone and 2019 Phone, there was also probable cause to seize all three phones.  Cf. Smith, 967 F.3d at 208-09 (noting that the tablet was owned by Smith).  As such, the Government had "more time . . . to retain possession of the [phones] pending their application for a search warrant."  Id. at 209 ("The state has a stronger interest in seizures made on the basis of probable cause than in those resting only on reasonable suspicion," and "[a]ll else being equal, the Fourth Amendment will

tolerate greater delays after probable-cause seizures." (quoting United States v. Burgard, 675 F.3d 1029, 1033 (7th Cir. 2012)); see also Mot. at 8 (conceding probable cause diminished Wells' property interest).

The Court acknowledges that in Smith the Second Circuit held that, even with the existence of probable cause, this factor was neutral or weighed in the defendant's favor in light of the defendant's otherwise "strong property interest" in his tablet. 967 F.3d at 209. Here, however, the probable cause that existed to search Wells' phones was stronger than the probable cause supporting the search of the tablet in Smith. Indeed, in Smith, probable cause existed to believe that the seized tablet contained child pornography on the basis that the defendant was a registered sex offender and, during a traffic stop, the officer saw "male genitalia near a 'possibly' pre-pubescent female's genitalia" on the tablet. Id. By contrast, here, Wells had been the subject of an ongoing investigation into criminal activity that involved Wells exchanging text messages and phone calls in furtherance of that illegal conduct. See e.g., ECF 87-1 ¶ 10; see also ECF No. 39 at 12 (finding warrant applications were "more than sufficient to create probable cause to believe that the Phones would contain evidence of criminal activity by defendant").

The Government also argues that Wells' New Jersey probation condition diminished his property interest in the phones. See

Opp. at 7.  While the Court finds that Wells' probation condition
certainly reduced his expectation of privacy as to the phones, the
probation condition did not diminish Wells' possessory interest.
Indeed, the probation condition only contemplates searches
"conducted by a probation officer," ECF No. 92-1 at 2, suggesting
that the condition was "confined to searches bearing upon
probationary status and nothing more." United States v. Knights,
534 U.S. 112, 116, 120 (2001) (finding probationer with "search
condition provid[ing] that [probationer] will submit to a search
'by any probation officer or law enforcement officer' and [] not
mention[ing] anything about purpose . . . significantly diminished
[probationer's] reasonable expectation of privacy" during search
by law enforcement officer).  Accordingly, the Court cannot find
that this probation condition diminished Wells' property interest
with respect to searches conducted by New York law enforcement
officers.

In light of the facts that Wells does not own the First 2018
Phone or the 2019 Phone and that the Government had strong probable
cause to search all three phones, the Court concludes that this
factor weighs in favor of the Government.

### 4. Justification for the Delay

The justification for the delay, which the Government argues
was "attributable to several factors," also favors the Government,

particularly for the 2018 Phones, which were subject to the 29-day delay.  Opp. at 8.

First, the Government justifies the delay by explaining that it was "continuing to actively investigate the case against Wells during the entire relevant period, including through awaiting and reviewing a search warrant return for a social-media platform Wells used to recruit coconspirators and obtaining and reviewing records to identify additional fraud."  Id.  The Government notes that "much of this additional investigation was not incorporated into the warrant affidavits themselves," but argues that the fact that "the investigation was nevertheless actively being pursued . . . justifies delay in obtaining a warrant."  Id.  Indeed, "[w]hile the officers' continued investigatory work may not have prevented them from securing a search warrant at an earlier date, it does show that they exercised some degree of overall diligence in pursing their case against [Wells]."  Green, 2021 WL 1877236, at *8.  As such, the Court agrees that the Government's ongoing investigation during the relevant period should be considered.  See e.g., Corbett, 2021 WL 4480626, at *6 ("[T]he government provided a reasonable explanation that the investigation of the alleged enterprise and its associates and members was continuing as justification for the delay in filing a warrant application."); cf. Hay, 2023 WL 142119, at *10 (describing fact that officers were "continuing to build their case" against the defendant as a

"factor to consider" but deciding that "the ATF agent's lack of awareness for almost 18 months that the BPD possessed the phones is untenable").

Additionally, the Government argues that "multiple agencies and NYPD components involved in the devices' seizure and investigation delayed the Government in applying for search warrants." Opp. at 8. The Government explains:

> With all three devices, the devices were initially seized pursuant to inventory searches or incident to arrest, then retained pursuant to probable cause. The officers seizing the devices in the first instance were not the officers investigating Wells for fraud and identity theft crimes. In addition, although the investigation was conducted with the NYPD, the federal agents involved in the investigation were Special Agents with the U.S. Attorney's Office, and there was thus some delay given the multiple agencies and components of the NYPD involved.

Id. Furthermore, with respect to the 2018 Phones, the Government argues that "[a] warrant application was prepared and internally approved within the U.S. Attorney's Office, as of Monday, November 19, 2018," 21 days after the seizure of the 2018 Phones, "[h]owever, the Thanksgiving holiday of November 22, 2018, delayed the submission of the warrant[] [as] [t]he undersigned Assistant U.S. Attorney was out of state and on leave from Saturday, November 17, 2018 through Saturday, November 24, 2018." Id. at 2. And, for the 2019 Phone, the Government states that "[n]ear the time of the Third Device's seizure, the main case agent, Special Agent

16

Anthony Giattino left the U.S. Attorney's Office and was replaced by Special Agent Jeremy Rosenman," who needed to "learn about the case [and] meet Detective Spell." Id. at 2, 8.

Taken together, these justifications sufficiently distinguish this case from Smith, where the Government argued that the month-long delay was justified merely "by reason of [the officer's] caseload and the geographical size of the region that he covered." 967 F.3d at 210. Accordingly, this factor weighs in favor of the Government for all three phones, but more strongly for the 2018 Phones, which were subject to only a 29-day delay, which included the Thanksgiving holiday.

### 5. Balancing the Factors

In sum, the Court finds that the first factor (length of delay) weighs in favor of Wells; the second factor (importance of the seized items to the defendant) weighs strongly in favor of the Government; the third factor (diminished property interest in the seized items) weighs in favor of the Government; and the fourth factor (justification for delay) weighs in favor of the Government, particularly for the 2018 Phones, which were subject to only a 29-day delay including the Thanksgiving holiday.

After balancing these four factors, the Court concludes that the 29-day and 48-day delays did not violate the Fourth Amendment in light of the factors favoring the Government. See e.g., Corbett, 2021 WL 4480626, at *7 (101-day delay was not unreasonable

under the Fourth Amendment where first factor favored the defendant but other three factors favored the Government); <u>Green</u>, 2021 WL 1877236, at *8 (three-month delay not unreasonable under the Fourth Amendment where the first factor favored the defendant, second and third factors heavily favored the Government, and fourth factor was neutral); <u>In re Application for a Search Warrant</u>, 2020 WL 6875048, at *7 (51-day delay was not unreasonable under the Fourth Amendment where first and fourth factors weighed strongly in favor of the defendant but second and third factors weighed strongly in favor of the Government).

**B. Exclusionary Rule**

Even if the Court found that there was a Fourth Amendment violation, the exclusionary rule would not apply here as the Court finds no evidence to indicate that the police "violated the Constitution deliberately, recklessly, or with gross negligence, or if a constitutional violation is the product of recurring or systemic negligence." <u>Smith</u>, 967 F.3d at 211 (citing <u>Davis</u>, 463 U.S at 240; <u>Herring</u>, 555 U.S. at 144). Indeed, the 29-day and 48-day delays here simply "did not afford the police any strategic advantage." <u>Id.</u> at 212. Wells argues that "the traffic stops were an expedient way to seize the phones as part of 'an inventory search,'" Mot. at 11, but this Court already rejected Wells' arguments that the phones were unlawfully seized and that the

18

search warrants were not supported by probable cause, see ECF No. 39 at 12.

The Court also rejects Wells' suggestion that the Government must have accessed the phones prior to obtaining the warrant because each phone's International Mobile Equipment Identity ("IMEI") number was listed as not available on its respective property voucher following the inventory searches, but was included on the warrant applications. See Mot. at 12; ECF Nos. 87-1, 87-2, 87-5. Wells states that the IMEI numbers were not "on the outside of the phone[s]," and insists that the "government accessed the digital data contained on the phones, including the IMEI numbers, prior to obtaining a warrant." Mot. at 12-13. While Investigative Specialist Enrique Santos "do[es] not recall how the [IMEI] numbers, used to identify the Phones, were obtained," there are a number of ways to obtain an IMEI number that do not require digital data to be accessed. Santos Aff. ¶ 7. For example, as Santos states, the IMEI numbers "may have been obtained by viewing the SIM card tray on the cellular device."[5] Id. In addition, the Court understands that IMEI numbers can be obtained from cell phone service providers. See ACLU v. Clapper, 785 F.3d 787, 797 (2d

---

[5] Wells does not argue that obtaining the IMEI numbers from the phones' SIM card trays would constitute a Fourth Amendment violation. See Reply (making no argument concerning Santos' statement that IMEI number may have been obtained from the phones' SIM card trays). Rather, Wells suggests that the IMEI numbers must have been obtained after accessing the phones' digital data. See Mot. at 12.

Cir. 2015) (discussing production of IMEI numbers from Verizon
Business Network Services, Inc.).

Even after the warrants were obtained, the 2018 phones, which
were password protected, were sent to Cellebrite for unlocking.
See Santos Aff. ¶ 8.  Had the agents already accessed the data, it
does not make sense that the Government would have expended the
resources to send the phones to Cellebrite. In addition, it is
telling that the warrant applications relied totally on
information obtained before the warrants were even seized.  See
Opp. at 8.  Rather, it is exceedingly more likely that the
Government obtained the IMEI numbers without accessing the phones'
digital data.  Indeed, based on case law in the Circuit, law
enforcement officers appear to commonly list cell phones' IMEI
numbers on their corresponding search warrant applications.  See
e.g., United States v. Frey, No. 219 Cr. 537 (DRH) (SIL), 2022 WL
1284318, at *2 n.2 (E.D.N.Y. Apr. 29, 2022); United States v.
Hamilton, No. 20 Cr. 545 (PMH), 2022 WL 1157382, at *1 (S.D.N.Y.
Apr. 19, 2022); United States v. Stearns, 556 F. Supp. 3d 208, 210
(W.D.N.Y. 2021); United States v. Estime, No. 19 Cr. 711 (NSR),
2020 WL 6075554, at *1 (S.D.N.Y. Oct. 14, 2020).  Often, these
IMEI numbers result in cell phones amounting to independent
"physical evidence" as such IMEI numbers "tie the Devices to phone
records or online accounts."  Corbett, 2021 WL 4480626, at *6.

Furthermore, the record does not show systemic or recurring negligence.  See Smith, 967 F.3d at 212.  Indeed, Wells is mistaken when he argues that the fact that there were delays in obtaining search warrants in both 2018 and 2019 rises to the level of systemic negligence.  See Mot. at 12.  Even in Smith, the Second Circuit "[could] not say that a reasonably well-trained officer . . . would have known that the month-long delay amounted to no less than a violation of [the defendant's] Fourth Amendment rights," given "this is not an area of Fourth Amendment law that has reduced itself to bright-line rules."  967 F.3d at 212.  As the Second Circuit highlighted, previously "precedent ran both ways" and some courts "uph[eld] delays of similar or even much longer duration" than the month-long delay at issue in Smith.  Id. (citing, among other cases, United States v. Howe, 545 F. App'x 64, 65-66 (2d Cir. 2013) (describing thirteen-month delay in obtaining a search warrant as "lengthy" but not "constitutionally unreasonable")).  The same is true here, where both the seizures and warrant applications pre-dated Smith by more than one year, the 29-day delay was shorter than the 31-day at issue in Smith, and the 48-day delay was only 17 days longer than the 31-day delay at issue in Smith.  See Opp. at 10.[6]  As such, "[t]here would be

---

[6] The Court does not dispute that through Smith "the Second Circuit explicitly put law enforcement on notice that month-long, unjustified delays will no longer be tolerated."  Mot. at 14.  At the time of the seizures of the phones, however, such a bright-line rule had not yet been created.  Accordingly, courts have declined to apply the exclusionary rule to delays preceding Smith.  See e.g.,

no appreciable deterrent value achieved by ordering suppression of the evidence in this case." <u>Smith</u>, 967 F.3d at 212.

## CONCLUSION

For the foregoing reasons, Wells' second motion to suppress is denied in its entirety. A status conference will be held on March 9, 2023 at 12:00 p.m. Speedy Trial Time is excluded until then to enable Wells and his counsel to consider their course of action in light of this decision. The Court finds that the ends of justice are served by the granting of this continuance and that the continuance outweighs the best interests of the public and Wells in a speedy trial. <u>See</u> 18 U.S.C. § 3161(h)(7)(A). The Clerk of Court is respectfully directed to terminate the motion pending at ECF No. 87.[7]

---

<u>Green</u>, 2021 WL 1877236, at *8; <u>cf.</u> <u>Hay</u>, 2023 WL 142119, at *11 ("Unlike the timeline concerning Payne, where his cell phone was seized and the search warrant application submitted between 10 and 11 months prior to the issuance of the <u>Smith</u> opinion, as to Hay, <u>Smith</u> was issued months before the search warrant application was ultimately submitted.").

[7] In his reply in support of his second motion to suppress, Wells states that he has "very specific concerns regarding the timing of the extractions of his phones based on his review of the extraction reports" and reserves "his right to make argument concerning the appropriateness of the government's actions in accessing his phone." Reply at 9. Considering the Government provided the extraction reports nearly two years ago and the Court has given Wells and his counsel numerous opportunities to raise whatever suppression issues they wished, the time to raise any other issues was in the second motion to suppress.

**SO ORDERED.**

Dated:      New York, New York
            February 23, 2023

                                          NAOMI REICE BUCHWALD
                                     UNITED STATES DISTRICT JUDGE